## No. 13,269.

KITRELL ET AL. *v.* GATES ET AL.

(33 P. [2d] 390)

Decided May 21, 1934.

Mr. LOUIS A. HELLERSTEIN, Mr. A. B. MANNING, for plaintiffs in error.

Mr. HENRY S. SHERMAN, for defendants in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

IN the trial court, plaintiffs in error were defendants, and defendants in error were plaintiffs, and will be herein referred to as they appeared at the trial.

This writ of error is prosecuted by Kitrell, one of the defendants, to reverse a joint and several judgment against all defendants, and he will be referred to as Kitrell. Berkowitz and Watkins were named as defendants; Watkins was never served with process, and Berkowitz does not appeal.

The complaint was filed in February, 1932, alleging that the tort on which the action is founded, was committed in Larimer county, the residence of plaintiffs; that the defendants, Paramount Life Company, and the Paramount Life Insurance Company are Colorado corporations, and that Kitrell is a director and president of both companies; that on April 16, 1930, defendants induced plaintiffs to purchase 192 shares of common stock of the Paramount Life Company, at $50 per share, to be paid for by conveyance of half a section of Weld county land, at agreed value of $9,600, subject to encumbrance of $3,300, grantee to be named by defendants; that plaintiffs were to transfer and deliver to the order of defendants, 15 shares of Fort Collins Building and Loan Association stock, at agreed value of $1,800, also an automobile valued at $1,250, and $250 in cash. The complaint further alleges, that in order to induce plaintiffs to purchase said stock, the defendants Kitrell, Berkowitz and Watkins, falsely and fraudulently represented that the Paramount Life Company had fully complied with all requirements to be chartered by the insurance commissioner of Colorado to write life insurance, and subject to such authorization, was taking applications for insurance and that said authority would be granted immediately; that said company owned an office building at Colfax and York street, Denver, Colorado; that it had purchased the Lewis and Clark Insurance Company of Montana, and owned all its stock and business; that said Paramount Life Company had assets of approximately $1,000,000, owned over 6,000 acres of land in New Mexico, and that its stock was worth $50 per share. Plaintiffs further alleged, that believing the foregoing statements to be

true, and relying thereon, the transaction was consummated; that a deed to the Weld county land, without naming grantees, the space therefor 'being left blank, was made and delivered to Berkowitz and Watkins; that the building and loan stock was endorsed and delivered to Berkowitz and Watkins, and the automobile delivered to them; that said conveyances and delivery were made to these last named defendants, as agents for the defendant companies; that the representations were false and untrue and known by defendants to be false and untrue at the time they were made to plaintiffs, and that defendants were guilty of fraud and wilful deceit; that by reason thereof, plaintiffs have lost the value of the property conveyed, to their damage in the sum of $9,600, and tender into court the stock so purchased. Prayer is for cancellation of conveyances, and if that cannot be had, then for judgment for the value of the property conveyed, together with body execution against the individual defendants.

To this complaint, Kitrell filed a motion to separately state causes of action, and as grounds therefor alleged that the complaint united an action in tort and an action for rescission of contract. This motion was overruled and Kitrell answered. After general admissions, he denied the commission of any tort by him; denied all matters alleged in the complaint concerning any connection he had with the sale of the stock to plaintiffs; denied that he in any manner induced plaintiffs to purchase the stock or that he made any statement whatever concerning the purchase of the stock and denied that Berkowitz and Watkins were his agents or in any manner authorized to make any representations in his behalf. No replication was filed to this answer. Trial was had to the court and judgment was rendered against the defendants, that they cause to be reconveyed to plaintiffs within 15 days the land conveyed by plaintiffs to defendants and in the event such reconveyance was not made, that the clerk of the court act as commissioner to execute such a convey-

ance; that if the land could not be reconveyed, then that plaintiffs have judgment against the defendants for the sum of $6,300, and it was further ordered that judgment be entered against Kitrell jointly and severally with the other defendants in the sum of $3,000. The court did not order body execution as prayed for in the complaint. A motion for a new trial was dispensed with by the court.

Relative to the contention of defendant that the complaint improperly united two causes of action, we find the following pertinent allegations in the complaint:

"'* * * That the tort upon which this action is based was committed in the county of Larimer and State of Colorado. * * *

"'That by reason of the false and fraudulent representations of the defendants as aforesaid and by reason of plaintiffs' reliance thereon, plaintiffs have lost the value of the property hereinbefore described, conveyed, transferred and delivered to defendants, and have been damaged in the sum of Nine thousand six hundred (9,600) Dollars.

"'That plaintiffs still have the certificates of stock of the Paramount Life Company as aforesaid, and now tender the same into court for the benefit of said defendants as their interest may appear.

"'That this action is founded upon tort and in committing the tort complained of the defendants and each of them were guilty of malice, fraud and willful deceit."

From a study of these allegations, we are inclined to the view that an action for rescission, founded upon a tort, is stated, and not an action in tort. Plaintiffs charged a wrong to defendants, and based their right to rescind thereon, this if established gave them a right to recover what they had wrongfully been caused to part with, if such recovery could be had, if not, then to the value of the property thus found to be beyond recovery, and for body judgment as in such cases provided under section 5964, Compiled Laws of 1921. Defendants' motion

to separately state and number causes of action was properly overruled.

Counsel for Kitrell contends that the judgment was contrary to and not supported by the evidence or the law, in that the representations, if any, made by defendant Kitrell, were not as to material facts which influenced or induced the transaction, and that there is no clear or positive evidence that the representations, alleged to have been made by Kitrell, were false and untrue.

Surrounding the affairs of these embryotic defendant companies, is one outstanding confusing situation found in the names of these closely interlocked promotion schemes, launched at the same time under the same directorate and control. The names unerringly tell the story. "The Paramount Life Company" and "The Paramount Life Insurance Company." Whether by design or otherwise, this presents an open door for just such deception as is alleged to have been practiced here in the sale of stock. It is alleged and proven by all the evidence, except that of Kitrell, that the stock plaintiffs were about to, and did, purchase, was represented to be stock of a life insurance company, when in fact it was nothing more than stock in a promotion company, *Paramount Life Company,* whose articles of incorporation, folio 347, do not in any way empower it to act as a life insurance company. The insertion of the word "life" in the articles of incorporation, followed by the issuance of literature showing the value of "insurance" investment, some of which was supplied plaintiffs, was an obvious attempt at fraud and concealment, when considered with the fact that the same individuals had incorporated a life insurance company under a name with remarkable similarity. There is substantial proof that Berkowitz and Watkins carried on their employment, as salesmen, for this *near* life insurance company, in the manner alleged by plaintiffs, with the knowledge of Kitrell, who kept himself aloof from personal contact with the prospective buyers, and, as he no doubt thought, within the legal sidelines.

To confirm this conclusion, we will summarize the evidence.

March 30, 1930, the defendants Berkowitz and Watkins approached plaintiffs to sell them stock in an insurance company. The stock was actually purchased on April 16, 1930. Kitrell was president of the Paramount Life Company. He told the plaintiff Gates about the first week in April, 1930, that Berkowitz and Watkins were agents of the company for the purpose of selling stocks and bonds. Dr. Gates went from Fort Collins to Denver with Berkowitz and Watkins to see Kitrell to inquire from Kitrell concerning the representations made by Berkowitz and Watkins and also about the agency of Berkowitz and Watkins. Dr. Gates was introduced to Kitrell by Berkowitz as a person to whom they had been talking for two or three weeks in regard to buying stock. Dr. Gates told Kitrell of the representations made by Berkowitz and Watkins, and Kitrell substantiated them. Kitrell told Dr. Gates that he, Dr. Gates, was purchasing stock in an insurance company and that it was the Paramount Life Company; that it was just a matter of a few days before their certificate of authority would be issued by the insurance commissioner and that all requirements for issuance of license had been met; that they did own the Lewis and Clark Insurance Company of Great Falls, Montana; that the Paramount Life Company owned the valuable six thousand acre Maxwell tract in New Mexico; that it was treasury stock that Dr. Gates was getting. Berkowitz and Watkins also told Dr. Gates it was treasury stock. Dr. Gates relied upon the statements of Kitrell, Berkowitz and Watkins. Berkowitz admitted that he and Mr. Watkins, Mr. Watkins "mostly," made the representation to Dr. Gates and Mr. Miller which were testified to by them, and that he told Kitrell substantially all of the conversations that had occurred, also the statements he and Watkins made to Dr. Gates and Mr. Miller and practically everything said on both sides between the four of them. He got the statements made to Gates

and Miller from the literature furnished by the company. A kit book containing literature pertaining to successful insurance companies was furnished to him from the company's offices, and he talked life insurance stock to Dr. Gates and Mr. Miller. Berkowitz testified that Kitrell was vice president and in general management of the company and that he reported the various deals to him.

That Kitrell knew when plaintiff Gates talked to him, that Gates was about to trade for stock, believing it to be treasury stock of an *insurance* company there can be no doubt; that Gates was then inquiring into the affairs of such company from its president and director, to obtain material facts upon which to act, if satisfied, and that the purpose of such inquiry was well known to Kitrell, is also without doubt.

It is clear that the representations made by all three individual defendants: That plaintiffs were getting stock in an insurance company; that it was the Paramount Life Company; that the company owned the valuable six thousand acre Maxwell tract in New Mexico; that it owned the Lewis and Clark Insurance Company; that all requirements for issuance of license to sell insurance had been met, and that the issuance of the same was a mere formality and would be accomplished in a few days, are certainly material representations.

How can Kitrell in face of the representations made, and literature exhibited, escape the conclusions that must be drawn, when he testified that, "We never did get the license to write life insurance," and "We couldn't get by the insurance commission department, with the securities we had."

The information that formed the connecting link between closing or losing the deal with plaintiffs was supplied by Kitrell. It was the ground upon which the transaction rested. If the information was false or misleading, or if truth was purposely concealed, as is apparent, then Kitrell cannot escape the reasons that make the judgment in this case correct and just.

130

Judgment affirmed.

Mr. Justice Butler sitting for Mr. Chief Justice Adams and Mr. Justice Burke concur.